IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER MAGEN,<br><br>Plaintiff,<br><br>v.<br><br><br>MEDALLIA, INC., BORGE HALD, AMY PRESSMAN, LESLIE STRETCH, LESLIE KILGORE, MITCHELL DAUERMAN, DOUGLAS LEONE, JAMES D. WHITE, ROBERT BERNSHTEYN, STANLEY MERESMAN, AND STEVEN WALSKE,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alexander Magen ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Medallia, Inc. ("Medallia" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Medallia and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Medallia and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Thoma Bravo, L.P. ("Thoma Bravo") and its affiliates (the "Proposed Transaction").

2. On July 25, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Project Metal Parent, LLC ("Parent") and Project Metal Merger Sub, Inc. ("Merger Sub"). Parent and Merger Sub are affiliates of Thoma Bravo. Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into Medallia, with Medallia surviving the merger as a wholly owned subsidiary of Parent. As a consequence of the Proposed Transaction, Medallia shareholders will be entitled to receive $34.00 in cash, for each share of common stock owned (the "Merger Consideration").

3. On September 14, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Medallia and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Medallia shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Medallia shares.

9. Defendant Medallia is incorporated under the laws of Delaware and has its principal executive offices located at 575 Market Street, Suite 1850, San Francisco, California 94105. The Company's common stock trades on the New York Stock Exchange under the symbol "MDLA."

10. Defendant Borge Hald ("Hald") is and has been the Chairman of the Board of Medallia at all times during the relevant time period.

11. Defendant Amy Pressman ("Pressman") is and has been a Medallia director at all times during the relevant time period.

12. Defendant Leslie Stretch ("Stretch") is and has been the President, Chief Executive Officer ("CEO"), and a director of Medallia at all times during the relevant time period.

13. Defendant Leslie Kilgore ("Kilgore") is and has been a Medallia director at all times during the relevant time period.

14. Defendant Mitchell Dauerman ("Dauerman") is and has been a Medallia director at all times during the relevant time period.

15. Defendant Douglas Leone ("Leone") is and has been a Medallia director at all times during the relevant time period.

16. Defendant James D. White ("White") is and has been a Medallia director at all times during the relevant time period.

17. Defendant Robert Bernshteyn ("Bernshteyn") is and has been a Medallia director at all times during the relevant time period.

18. Defendant Stanley Meresman ("Meresman") is and has been a Medallia director at all times during the relevant time period.

19. Defendant Steven Walske ("Walske") is and has been a Medallia director at all times during the relevant time period.

20. Defendants Hald, Pressman, Stretch, Kilgore, Dauerman, Leone, White, Bernshteyn, Meresman, and Walske are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant Medallia, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Medallia provides an enterprise Software-as-a-Service platform in North America, Europe, the Middle East, Africa, and internationally. The company's platform utilizes deep learning-based artificial intelligence technology to analyze structured and unstructured data from signal fields in human, digital, and Internet of Things interactions. It offers suite of customer engagement products, such as engagement messaging, and CX profiles and journeys; contact center, including speech analytics, coaching and performance management, and quality assurance; digital products, consisting of digital experience and analytics; employee experience, comprising of employee pulse and journeys, employee ideation, and digital employee experience; and insights products, such as video and benchmarking. The company's product portfolio, comprises of Crowdicity that engages employees in sharing their ideas and observations about process, tools, and employee and customer experience enchancements in the context of existing workflows and collaboration tools; Decibel, a digital session recording and analysis platform; LivingLens, a video feedback platform; Stella Connect, a customer feedback and quality management platform that helps customer support teams analyze and improve performance in real time; Sense360, a consumer insights platform; Voci, a real-time speech to text platform; and Zingle, a multi-channel mobile messaging and customer engagement solution. In addition, it offers professional services, which include managed, implementation, and other services. The company serves retail, technology, manufacturing, financial services, insurance, and hospitality industries.

## The Company Announces the Proposed Transaction

23.     On July 26, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> **SAN FRANCISCO**—Medallia, Inc. (NYSE: MDLA) ("Medallia"), the global leader in customer and employee experience, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, in an all-cash transaction that values Medallia at $6.4 billion. Through this transaction, Medallia will become a private company with additional resources and greater flexibility to build on its innovation leadership and expand its customer impact. Additionally, the transaction will allow Medallia to benefit from the operating capabilities, capital support and deep sector expertise of Thoma Bravo – one of the most experienced and successful software investors in the world.
>
> Under the terms of the agreement, Medallia shareholders will receive $34.00 per share in cash, which represents a premium of approximately 20% to Medallia's unaffected closing stock price on June 10, 2021, the last full trading day prior to media reports regarding a possible transaction, and a premium of approximately 29% to Medallia's unaffected 30-day average price.
>
> "Today's announcement underscores our commitment to constant innovation, expansion and value creation," said Leslie Stretch, President and CEO of Medallia. "Since becoming a public company in 2019, we have made significant progress bolstering our leadership position in experience management. Today, Medallia benefits from a differentiated portfolio of cloud technology solutions and an expansive, loyal customer base across a diverse set of industry verticals and geographies. I look forward to our continued outstanding work in support of our customers. Furthermore, we are eager to build on our success and begin the next phase of differentiated growth, and we believe that becoming a private company represents the best opportunity to do just that. In addition to maximizing value for our shareholders, this transaction will enable us to execute on our long-term strategy with even greater effectiveness, efficiency and flexibility."
>
> "Medallia has positioned itself at the forefront of the experience management market with a best-in-class SaaS platform that leverages proprietary AI to help companies better understand their customers and employees and drive meaningful business growth at scale," said Scott Crabill, a Managing Partner at Thoma Bravo. "Medallia's ability to provide personalized and predictive insights across every channel and to companies of all sizes has become mission-critical in a rapidly expanding universe of structured and unstructured data, where more and more business is transacted digitally. We look forward to partnering with Leslie and the

talented Medallia team and applying our operational and investment expertise in software to support the company in the next phase of its growth journey."

"Medallia not only created the category of experience management but continues to re-define it through innovation, having built a unified, action-oriented platform with the most comprehensive signal capture technology on the market," said Peter Stefanski, a Principal at Thoma Bravo. "Medallia products are used extensively from the front line to the C-suite in enabling users to improve experiences in real-time with valuable data and insights. In a world where enterprises are only beginning to understand the power of using experience data to run their businesses, we are excited to support Medallia as it continues to capitalize on a massive, growing market opportunity."

**Transaction Details**

Following an unsolicited approach regarding an acquisition, the Medallia Board of Directors engaged in a robust strategic review process with the assistance of independent legal and financial advisors. This included an evaluation of Medallia's strategic plan as an independent company and other strategic alternatives. Following this process, the Medallia Board unanimously approved the transaction with Thoma Bravo, as it provides Medallia's shareholders with immediate and certain value.

Thoma Bravo has also entered into voting agreements with Medallia's directors and executive officers, and investment funds affiliated with these individuals. Under these agreements, which represent approximately 34% of Medallia's outstanding shares, the applicable shareholders have agreed to vote in favor of the transaction, subject to certain terms and conditions contained therein.

The agreement includes a 40-day "go-shop" period expiring on September 4, 2021. During this period, Medallia, assisted by its legal and financial advisors will actively initiate, solicit and consider alternative acquisition proposals from third parties. The Medallia Board will have the right to terminate the merger agreement to enter into a superior proposal, subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" process will result in a superior proposal, and Medallia does not intend to disclose developments with respect to the solicitation process unless and until it determines that such disclosure is appropriate or otherwise required.

The transaction is expected to close in 2021, subject to customary closing conditions, including approval by Medallia shareholders and receipt of regulatory approvals. Upon completion of the transaction, Medallia's common stock will no longer be listed on any public market. Medallia will remain headquartered in San Francisco.

**Advisors**

Morgan Stanley & Co. LLC is serving as lead financial advisor to Medallia, and BofA Securities and Wells Fargo Securities are also serving as financial advisors. Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as Medallia's legal advisor. Kirkland & Ellis LLP is serving as legal advisor to Thoma Bravo. Debt financing for the transaction is being provided by Blackstone Credit, certain funds managed by affiliates of Apollo Capital Management, L.P., KKR Credit, Thoma Bravo Credit and Antares Capital.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

24. On September 14, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

26. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

28.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Non-GAAP Operating Expenses, (ii) Non-GAAP EBIT; (iii) EBITDA; and (iv) Unlevered Free Cash Flow.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Morgan Stanley's Financial Opinion**

31. The Proxy Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

32. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

33. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) estimated future net cash for Medallia; (ii) Medallia's future-implied fully diluted equity value; (iii) estimated fully diluted shares outstanding for the Company; (iv) the inputs and assumptions underlying the use of a discount rate of 9.1%; and (v) the Company's estimated cost of equity.

34. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated unlevered free cash flows for the Company; (ii) The Company's terminal values; (iii) the basis underlying the discount rate ranges of 7.7% to 9.6%; (iv) the basis underlying Morgan Stanley's use of perpetual growth rates ranging from 3.0% to 4.0%; and (v) Medallia's weighted average cost of capital.

35. With respect to Morgan Stanley's *Selected Transactions Multiples Analysis* for the Company, the Proxy Statement fails to disclose the time of announcement for each transaction observed.

36. With respect to Morgan Stanley's *Illustrative Precedent Transaction Premiums* analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums of each transaction.

37. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose: (i) the future public market trading price targets for the Company noted by Morgan Stanley that were published by equity research analysts; (ii) the analysts observed; and (iii) the basis underlying the use of the discount rate of 9.1% to the range of analyst price targets.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

11

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Medallia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Medallia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Proxy Statement at length and described herein, the

Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 15, 2021                            Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*